## M. & J. SULLIVAN v. W. A. H. MILLER ET AL.

### No. 139.

**1. Fact Case—Construction of Power.**
See a power of attorney. general in its nature, and which general powers are not limited by other clauses therein .......................... 679

**2. Subscription.**
The purpose of a suoscription as between parties to it and a third person, who on the faith of it may render services contemplated by it, but without further contract, is to fix the sum for which each subscriber will be liable; but the fact that a subscription may have been made or is in contemplation when power is given to an agent to make a contract to which the subscription relates, can not of itself operate as a limitation of the power of the agent .......................... 680

**3. Same—Security.**
The clause "And in consideration of the premises and the contract for the grading of said road to be entered into by our said attorney, we hereby agree and obligate ourselves respectively to secure our subscription heretofore or hereafter to be made for the grading and extension of the aforesaid road," etc., did not restrict a general power to said attorney to contract for the grading, etc. The contract to guarantee the subscription did not affect the general power........................ 681

CERTIFIED QUESTION from Court of Civil Appeals for Third District, in an appeal from Llano County.

*McLeary & Fleming,* for appellants. — 1. On construction of the power: Wright v. Blackwood & Frazier, 57 Texas, 648, 649; Gouldy v. Metcalf, 75 Texas, 455; Mech. on Agency, secs. 294, 295; Marr v. Given, 23 Me., 55; Venata v. Hopkins, 1 J. J. Marsh., 285.

Intentioned to be discovered by language used: Mech. on Agency, secs. 296, 297, 308, 313, 314; Ireland v. Livingston, L. R., 5 H. L., 395; Railway v. Johnson, 74 Texas, 263; Railway v. Dilley, 65 Texas, 686; Chi-

cago v. Chilton, 9 Wall., 50; D'Aquin v. Barbour, 4 La. Ann., 44; Bish. on Con., sec. 412.

2. On ratification: Collins v. Cooper, 65 Texas, 460; Vincent v. Rather, 31 Texas, 77; Harrington v. Moore, 21 Texas, 546; Carter v. Rowland, 53 Texas, 540; Reese v. Medlock, 27 Texas, 120; Mech. on Agency, secs. 148, 149, 154; Neven v. Belknap, 2 Johns., 573; Henderson v. Railway, 17 Texas, 575; Cook v. Tullis, 18 Wall., 332.

*W. T. Dalrymple* and *James Flack*, for appellees. — 1. The power of attorney from appellees to Miller did not authorize Miller to contract and bind appellees to pay beyond the amounts each individual had subscribed for building the road, nor to pay the same in any manner otherwise than is provided in said power. Its meaning is plain, not ambiguous nor uncertain, and the court rightly construed its meaning.

2. Before a principal will be held to have ratified the unauthorized acts of an agent, it must be shown that the principal had full knowledge of all the facts and circumstances sought to be ratified. The burden of showing such knowledge is on the party claiming the ratification, and in this case it was not shown, and the court's refusal to charge it was correct. Reese v. Medlock, 27 Texas, 123; Vincent v. Rather, 31 Texas, 91; 1 Am. Leading Cases, 574; Story on Agency, secs. 90, 239; Story on Con., 160.

STAYTON, Chief Justice.—Appellees executed the following instrument:

"*State of Texas, County of Llano.*—Know all men by these presents, that we, the undersigned subscribers, citizens of the said county of Llano, State of Texas, have made, constituted, and appointed, and by these presents do make, constitute, and appoint W. A. H. Miller, of said county of Llano, our true and lawful attorney, for us, and in our names, place, and stead, to enter into contract with the San Antonio & Aransas Pass Railway Company for an extension and operation of its railway from some point on the Kerrville extension of said railway, at or near the bridge of same on the Guadalue River, thence via the town of Fredericksburg to the town of Llano, and also to enter into a contract for the grading of said railway from said point on said railway to said town of Llano; giving and granting to our said attorney full power and authority to do and perform all and every act and thing whatever requisite and necessary to be done in and about the premises, as fully and to all intents and purposes as we might or could do if personally present and acting; hereby ratifying all our said attorney may lawfully do or cause to be done in and about the premises. And in consideration of the premises and the contract for the grading of said road to be entered into by our said at-

torney, we hereby agree and obligate ourselves respectively to secure our subscription heretofore or hereafter made for the grading and extension of the aforesaid road, by good and sufficient bankable security, to be approved and made payable to Moore, Foster & Co., bankers, of Llano, Texas, to be held in trust, and to enable them to guarantee the payment to such contractors for the grading of said road of our respective subscriptions, as follows, viz.; that is to say, upon the completion of the grading of each ten miles of said railway, beginning at the town of Fredericksburg, thence to Llano town, to pay upon our said obligation respectively the sum of 20 per cent, and the remainder of such subscription, if any, to be paid upon the completion of said grading of said railway to said town of Llano; provided, said grading of said road be completed to said town of Llano on or before the 1st day of January, 1890. And in consideration of the premises, we further agree and obligate ourselves to secure the right of way for the said railway from the line of Llano County to the town of Llano, and also to secure depot grounds at the town of Llano.

"Witness our hand, this 28th day of January, A. D. 1889."

Acting under this instrument, W. A. H. Miller, for himself and as attorney in fact for those who executed it, made a contract with appellants to grade roadbed contemplated by the instrument, but that contract did not limit the liability of the makers of the instrument to the amount of their several subscriptions.

Appellants having rendered the service, brought action to recover under the terms of the contract; and the question certified is, Should the instrument be held to authorize Miller to execute the contract sued on, which bound appellees to pay absolutely the price agreed upon for grading the roadbed; or should it be construed only to authorize him to execute in their behalf a contract binding them to pay for the work only the sums subscribed by them respectively?

The first clause of the instrument empowered Miller to make a contract with the railway company for extension and operation of its road from point named to the town of Llano, and with reference to this his power to contract was without restriction.

The second clause expressly empowered Miller to make any contract for grading the road between the points named which the makers of the instrument themselves could make; and they certainly could have bound themselves as he contracted for them they should be bound.

Those are the clauses conferring power on the agent; and confined to the subjects to which they relate, the powers so given were as broad as language could make them; and it only remains to consider whether succeeding clauses restrict the powers thus conferred.

The next clause recognizes the fact that power to contract for grading

the contemplated road had been given by the preceding clause, and in consideration that some person would contract to do the work, the makers of the instrument, for his benefit and security, bind themselves to do certain things.

They were authorizing their agent to make a contract for the entire grading of the road, and this clause shows not only that they had then made subscriptions for that purpose, but that they also contemplated making further subscription if necessary to pay for the work to be done under a contract to be made by the agent.

Through subscription they doubtless intended, as between themselves, to fix the sum each should pay; but this does not affect the question of powers given to the agent, in the absence of language showing intent not to authorize him to bind each of them further than they were bound by their several subscriptions.

The purpose of a subscription, as between parties to it, or as between them and a third person who, on the faith of it, may render services contemplated by it, but without further contract, is to fix the sum for which each subscriber will be liable; but the fact that a subscription may have been made or is in contemplation when power is given to an agent to make a contract in reference to the matter to which the subscription relates, can not of itself operate as a limitation on the power of agent.

How large the subscription was when the power was given does not appear; but in view of the fact that the agent was authorized to contract for the entire grading on the responsibility of his principals, the only legitimate inference from the language used is, that if the subscription then existing was not sufficient, they would increase it until it became sufficient to pay for the work in reference to which the agent was to contract.

There is nothing in the instrument to indicate that its makers conferred the power in anticipation that others would furnish funds to assist in paying for the work the agent was empowered to contract for; and the necessary inference from the language used, as well as from the transaction itself, is that the power to bind them to pay was as broad as the power to contract to have the entire work done for them.

This clause of the instrument is relied upon to limit the power conferred by the preceding, so as to deny the agent power to bind his principals beyond the extent of their several subscriptions, and it becomes proper to ascertain the purpose for which it was inserted.

As before said, the purpose of that clause was to secure to the persons with whom the agent might make a contract compensation for the work he should do in a manner other than would it be by the mere personal obligation of the makers, however evidenced.

The consideration for this additional obligation was declared to be " the premises and the *contract for the* grading of said road to be entered into by our said attorney."

Based on this consideration, the makers of the instrument declare, that "we hereby agree and obligate ourselves respectively to secure our subscriptions *heretofore or hereafter* made for the grading and extension of the aforesaid road."

This security was to be furnished by the guaranty of Moore, Foster & Co. of "payment to such contractors for the grading of said road of our respective subscriptions as follows, viz.; that is to say, upon the completion of the grading of each ten miles of said railway, beginning at the town of Fredericksbug, thence to Llano town, to pay upon our obligation respectively the sum of 20 per cent, and the remainder of such subscription, if any, to be paid upon the completion of said grading of said railway to the town of Llano."

To secure this guaranty the parties obligated themselves to deposit with Moore, Foster & Co. "good and sufficient bankable security, to be approved and made payable to Moore, Foster & Co., bankers, of Llano, Texas, to be held in trust and to enable them to guarantee."

If this guaranty could be held to apply only to payment of subscription existing when the power was given, and not to payment in full for all the work authorized to be contracted for, this would not affect the question of power; for the parties might consistently bind themselves to have payment of part guaranteed by the bankers, while any sum to become due and not thus secured would rest on the mere personal obligations of the parties.

If the guaranty was to relate solely to subscription existing when the power was given, it would be proper so to restrict it in any matter in which it came in question; but when the parties obligated themselves to obtain guaranty for "our subscription" "hereafter made," as well as for subscription then existing, it would be difficult to escape the conviction that this subsequent subscription was to be large enough to cover the entire cost of the work under the contract to be made; something not susceptible, perhaps, of being made certain until the work was done, and that the guaranty was to cover a sum sufficient to pay the entire cost of the work under the contract the agent was empowered to make.

That the instrument empowered the agent to contract for grading the entire road between the points named is clear; and in the absence of something in it showing that its makers intended to empower him to contract to pay therefor only such sums as they had subscribed, it must be held that power was given to him to make a contract binding them to pay the cost of the work, without reference to the amount of their subscriptions.

If they had intended otherwise, the instrument should have said, in substance, that he should have power to make a contract for grading the road if this could be done for a sum not to exceed the subscription.

We are of opinion, that the instrument conferred power on Miller to make the contract certified; that it is not uncertain; and that the court trying the cause should have construed it without reference to extrinsic testimony.

Delivered May 14, 1894.